(No. 4063—

ELSIE CAUFIELD, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 21, 1948.*

PAULSON, MORGAN & JORDAN (MR. W. BEN MORGAN of Counsel), Attorneys for Claimant.

HON. GEORGE F. BARRETT, Attorney General, and HON. WILLIAM J. COLOHAN, Assistant Attorney General, for Respondent.

ECKERT, C. J.

On January 20, 1947, Elsie Caufield, an employee of the respondent in the Department of Public Welfare, while working as an attendant at the Elgin State Hospital assisting patients from the dining room at Hirsh cottage, slipped and fell, breaking her right wrist. Immediately thereafter she was hospitalized and the wrist placed in a cast. On February 13, 1947 the cast was removed and the fracture was re-set. Claimant returned to work on April 1, 1947.

On July 14, 1947, while putting patients to bed at the same institution, claimant tripped on a mattress on the floor, fell and broke her left wrist. The wrist was placed in a cast and claimant returned to work on September 1, 1947.

At the time of both injuries, claimant and respondent were operating under the provisions of the Workmen's Compensation Act of this State, and notice of the accidents and claims for compensation were made within the time provided by the Act. The injuries arose out of and in the course of the employment.

Claimant, at the hearing before Commissioner Blumenthal, testifying on her own behalf, stated, in reference to her right wrist, that she cannot hold a paring knife, cannot peel anything, and finds it very difficult to sew or wash; that she has lost strength in her right wrist and hand, and has pains in her right upper arm; that she can

not hold anything tightly in her right hand, and cannot close the fingers on her right hand.

Testifying in reference to her left wrist, claimant stated that she suffers pain in her wrist and arm if she pushes or carries anything; that she flexes her fingers with some difficulty, but can flex her fingers of her left hand better than her fingers of her right hand. She stated that she cannot grasp objects firmly with her left hand.

Dr. Lyman Wood Smith, testifying on behalf of claimant, stated that he first examined her in his office on July 14, 1947. The examination disclosed pain and disability of the left wrist. X-rays disclosed a fracture which was reduced under local anesthesia and a cast applied. The cast was changed eleven days later and the forearm and hand were held in an aluminum splint for another two weeks. A subsequent examination by Dr. Smith on December 16, 1947 revealed no limitation of motion in claimant's left shoulder, left elbow, or in any of the finger joints, but disclosed a marked deformity of the left wrist with considerable shortening of the radius. The wrist was held at 32 degrees of radial deviation, being a deviation of 30 degrees from normal. This examination also showed a one-fourth inch atrophy of the left forearm as compared to the right. Extension of the wrist was 85 degrees but flexion was limited to 35 degrees and these was only 10 degrees of adduction. Dr. Smith also testified that there was tenderness to pressure over the anterior aspect of the radial carpal joint and the grasp of the hand was weak. X-rays taken on this latter examination showed a healed Colles type of fracture with malunion and complete disruption of the distal radial ulnar joint, and an unhealed fracture on top of the ulnar styloid process. Dr. Smith, after the examination, con-

cluded that claimant had suffered a 20% permanent partial disability of the left wrist.

Dr. Smith also testified that on April 30, 1948 he examined claimant's right wrist. He stated that the examination disclosed the right wrist to be held at 18 degrees of radial deviation; that motions of the right wrist were: ulnar deviation 30 degrees; extension 40 degrees; flexion 40 degrees. There was also stiffness in the fingers which could be flexed to within one inch of the palm. The loss of motion in the fingers was found to be primarily in the interphalangeal joints. Rotation of the forearm was complete and the grasp of the right hand was weak. Dr. Smith testified that X-rays revealed an ununited fracture of the tip of the ulnar styloid process and a complete loss of the normal forward tilt of the radius at the radial carpal joint. Dr. Smith stated that claimant had suffered a permanent partial disability in her right wrist of about five to ten per cent.

Dr. Charles K. Bush, Jr., testifying on behalf of respondent, stated that on January 20, 1947 he examined claimant and found a Colles fracture of the right wrist; that he took X-rays and thereafter applied a plastic cast. The X-rays showed multiple fractures of the distal end of the radius with several fracture lines extending into the wrist joint. There was impaction and slight angulation of the distal fragments. The styloid process showed a transverse fracture with slight separation. Dr. Bush stated that a later examination on February 11, 1947 showed more impaction of the fracture, and a radial displacement of the hand. A re-examination after reposition in the cast on February 24th showed the fragments in good alignment. Dr. Bush stated that in his opinion claimant had suffered a five to ten per cent permanent partial disability of her right hand.

Dr. Bush also testified that subsequent to claimant's injury on July 14, 1947, it was found that she had a Colles fracture of the left wrist; that from his examination of X-rays taken of claimant's left wrist he found evidence of an old fracture of both bones of the forearm with a separation of the styloid process of the ulna and shortening of the radius, with angulation toward the radial side, and a deformity in which the carpal bones do not make good contact with the end of the ulna. In Dr. Bush's opinion, claimant has suffered a twenty per cent permanent partial disability of the left wrist.

Claimant's earnings for the year prior to January 20, 1947 were $1479.25 and her earnings for the year prior to July 14, 1947 were $1543.55. Claimant had no children under sixteen years dependent upon her for support. During the period of January 20, 1947 to and including April 1, 1947, claimant received on account of temporary total disability the sum of $306.13. During the period of July 14, 1947, to and including September 1, 1947, claimant received on account of temporary total disability the sum of $240.00.

From the record, and from the report of Commissioner Blumenthal who examined both of claimant's wrists, the court is of the opinion that claimant has suffered a 10% permanent partial loss of use of her right arm and a 20% permanent partial loss of use of her left arm. Claimant's weekly compensation rate for the first accident injury is $17.06 and her weekly compensation rate for her second injury is $19.29.

Claimant was temporarily totally disabled for a period of ten weeks from January 20th, 1947 to April 1st, 1947, for which period she was entitled to total compensation in the amount of $170.60. She was paid during this period $306.13, or an over-payment of $135.53.

Claimant was temporarily totally disabled for a period of seven weeks from July 14, 1947 to September 1, 1947, for which period she was entitled to total compensation in the amount of $135.03. She was paid during this period $240.00, or an over-payment of $104.97.

Claimant is entitled to an award for 10% permanent partial loss of use of her right arm for a period of 22½ weeks at $17.06 per week, or a total of $383.85, from which must be deducted the over-payment of $135.53, leaving a balance of $248.32.

Claimant is entitled to an award for 20% permanent partial loss of use of her left arm for a period of 45 weeks at $19.29 per week, or $868.05, from which must be deducted the over-payment of $104.97, leaving a balance of $763.08.

An award is therefore entered in favor of Elsie Caufield in the aggregate amount of $1,011.40, all of which has accrued and is payable forthwith.

The taking and transcribing of the testimony before Commissioner Blumenthal was by A. M. Rothbart who has submitted a bill for his services in the amount of $43.10. The court finds these charges usual, fair, and customary, and an award is therefore made in favor of A. M. Rothbart in the amount of $43.10, payable forthwith.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."